UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS RAGAS | CIVIL ACTION NO. 17-9663 |
| VERSUS | |
| ESTATE OF JAMES SCHEXNAYDER, ET AL. | DIVISION 1 |
| | MAGISTRATE JUDGE JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Sheriff Willy Martin, Jr. and Dustin Poche. (Rec. Doc. 99). They argue that (1) plaintiff's false arrest claims fail as a matter of law because no defendant participated in the preparation of the relevant arrest warrant (2) plaintiff's denial of medical care claims fail because no defendant participated in the administration of medication to the plaintiff and because plaintiff otherwise duly received his medication and (3) plaintiff's Monell claims against Sheriff Martin fail because plaintiff has not shown that a municipal policy was the driving force behind the alleged constitutional violations. On the first argument and third arguments, plaintiff does not oppose. Accordingly, as to plaintiff's false arrest and Monell claims, defendants' Motion is GRANTED and said claims are dismissed. As to plaintiff's denial of medical care claims, because the undisputed facts establish no deliberate indifference on the part of the named defendants, the Motion is GRANTED and Mr. Ragas' federal claims are hereby dismissed with prejudice. As to his state law claims for denial of medical treatment, the court declines to exercise supplemental jurisdiction and such claims are dismissed without prejudice.

1

Background

Plaintiff Thomas Ragas was arrested on September 26, 2016, in St. James Parish after he called the police to his business to report a break-in and the arresting officer determined that Mr. Ragas was wanted on an outstanding arrest warrant. Mr. Ragas alleges that during his incarceration, prison officials refused to provide him with medication he needed causing him to suffer blackouts, falls, and critical injuries. Mr. Ragas alleges that on October 13, 2016, the State dismissed the charges against him and he was released.

The following facts related to Mr. Ragas' medical treatment claims are undisputed. On September 27, 2016, a medical screening was performed by Annette Butler. According to the form, Mr. Ragas reported that he was taking Oxycodone, Soma, and Zantac.[1] (Rec. Doc. 99-14). In a Medical Request Form dated October 3, 2016 and signed by Mr. Ragas, he complains that he had fallen five or more times before falling asleep and had hit his head on the cement floor. Rec. Doc. 99-15. He asserted that he could not open his jaw since Thursday, September 30, 2016. Id. He reported that he could not chew and that his shoulder, neck, back, wrists, and left foot hurt severely. Id. A history of anxiety was noted by the nurse. Id. He was treated by Dr. Dustin Poche who prescribed Naproxen Sodium, Tramadol, and Buspirone. Rec. Doc. 99-16. The prescribed medicine record indicates that Mr. Ragas accepted the prescribed medication as administered through his release date. Id. The prescribed medicine record does not reflect that Oxycodone, Soma, Zantac, or Zanax were ever administered.

In opposition to the motion for summary judgment, Mr. Ragas submits his own declaration. (Rec. Doc. 105-2).[2] He declares that he had at least five falls before October 1. He did not see Dr.

---

[1] In his declaration, Mr. Ragas asserts that he was taking Zanax and not Zantac but that he did not know of the mistake on the form.
[2] An unsigned copy of the declaration was included with the motion for summary judgment. Plaintiff later supplemented the record with a signed copy.

2

Poche until October 3, because that was his weekly visit to the jail and Mr. Ragas had not been booked yet during Dr. Poche's previous visit. Mr. Ragas declares that he was in so much pain from not having his medications that he would walk the cell floor at night and pound his back with his hands to try and reduce the pain. He says that he fell because he ultimately lost consciousness. He says on the morning after his first fall, he had two black eyes and his nose was crooked. He could not open his mouth and could not chew his breakfast. He says he asked the nurse for something to relieve the pain, but she refused. A guard gave him maximum strength Aleve. He declares that he asked the head jailor and the nurse to go to the doctor with an inmate who had been injured in a fight, but that was refused. He says that after his third fall, he felt like he had broken his ribs. He says he asked a jailor for something to wrap his ribs but was ignored. Mr. Ragas also says that every time he reported that he needed to go to the infirmary, when he got there, the nurse would laugh and say he was doing it to himself and would refuse treatment. He says that the nurse told Dr. Poche that he was sleepwalking. He said that this is what the doctor decided was wrong with him and sent him back to his cell. He admits that Dr. Poche prescribed several medications that "did reduce the pain, but were not as effective as [his] original medication."

Parties' Arguments

Defendants argue that Mr. Ragas' federal claim for denial of medical care should be dismissed because the undisputed evidence shows that a medical screening was performed when Mr. Ragas was booked. They submit the evidence shows that Mr. Ragas did not make any complaints prior to October 3, 2016, and that on that date he was immediately administered pain medication and continued to be administered the medication until his release. They argue that this shows that no defendant was deliberately indifferent to his medical needs. Defendants further

argue that Mr. Ragas' state law claims fail because he cannot show that Sheriff Martin, through an employee, breached a duty to provide Mr. Ragas access to adequate and reasonable medical care.

Mr. Ragas responds that his declaration shows that he began falling on September 28 or 29 and fell for four consecutive nights before he saw Dr. Poche. He says that his declaration shows that he complained to the nurse after each fall but she laughed at him and told him he was doing it to himself. He argues that inability to lie in bed because of pain from lack of treatment constitutes substantial harm and refusal to provide treatment for the pain is deliberate indifference.

Law and Analysis

1. *Summary Judgment Standard*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc.,

713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

"Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993). Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2. Section 1983 Claim

    a. Legal Standard

"The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (quotation marks omitted). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Regarding the "deliberate indifference" that must be shown with respect to a medical claim, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, *the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.* Furthermore, the decision

>whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (emphasis added; citations, quotation marks, and brackets omitted). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). The Fifth Circuit has further held that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

Importantly, "§ 1983 does not give a cause of action based on the conduct of subordinates." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983); Sanchez v. Young County, Texas, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). "Personal involvement is an essential element of a civil rights cause of action." Thompson, 709 F.2d at 382.

*b. Analysis*

The only named defendants in this lawsuit are Sheriff Martin and Dr. Poche who treated Mr. Ragas on October 3, 2020. Not a single factual allegation or piece of evidence implicates the personal involvement of Sheriff Martin.

As to Dr. Poche, the undisputed facts establish that he treated Mr. Ragas with pain medication on the day of Mr. Ragas' first Medical Request Form. The records show that Mr. Ragas was administered and he accepted this medication daily, as prescribed, until his release from the jail. Mr. Ragas admits that the medications offered him some relief from the pain. While he also complains that the medication was not as effective as the pain medication he had been taking, Mr. Ragas does not argue that Dr. Poche's treatment amounted to deliberate indifference. Indeed, absent exceptional circumstances, a prisoner's mere disagreement with her medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); see Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."); see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference). Dr. Poche's treatment of Mr. Ragas with pain medication that offered him some relief cannot possibly amount to deliberate indifference. At most, Mr. Ragas challenges Dr. Poche's apparent conclusion that Mr. Ragas' injuries were caused by sleepwalking. But Mr. Ragas

fails to show how this conclusion altered the treatment administered or caused the treatment to rise to the level of deliberate indifference.

In fact, Mr. Ragas' opposition memorandum is not focused on Dr. Poche at all. Instead, Mr. Ragas argues that before Dr. Poche's weekly visit to the jail, Mr. Ragas' repeated oral requests for medical treatment to the nurse and jailors on duty were laughed at or ignored (except for a jailor who gave him four maximum strength Aleve), despite his black eyes and contorted nose. But even if this were sufficient to establish deliberate indifference, these assertions do not implicate the personal involvement of either of the named defendants. As such, they do not change the court's conclusion that there is no evidence to show deliberate indifference on the part of Sheriff Martin or Dr. Poche.

3. *State Law Claims*

To the extent that Mr. Ragas is asking this Court to exercise supplemental jurisdiction to consider the merits of his state law claims, the court declines the invitation in light of the fact that he has no cognizable federal claim. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

## Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgement is GRANTED. Plaintiff's false arrest claims, Monell claims, and federal medical care claims against Sheriff

Martin and Dr. Poche are hereby dismissed with prejudice. Plaintiff's state law medical treatment claims against Sheriff Martin and Dr. Poche are dismissed without prejudice.

New Orleans, Louisiana, this 28th day of December, 2020.

_____
Janis van Meerveld
United States Magistrate Judge